The People of the State of Illinois, Plaintiff-Appellee, *v.* Dick E. Ackerman *et al.,* Defendants-Appellants.

(No. 70-201;

Second District—May 17, 1971.

Harold C. McKenney, of Crystal Lake, for appellants.

Jack Hoogasian, State's Attorney, of Waukegan, (Alphonse F. Witt, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendants were sentenced to terms in the penitentiary after pleas of guilty to an indictment charging each with Burglary (Ill. Rev. Stat. 1969, ch. 38, par. 19—1). Their appeal challenges the action of the trial court in suggesting that the defendants voluntarily take a lie-detector test in the course of a hearing on their motion for probation and in aggravation and mitigation.

The court heard testimony from the police officers who investigated the offense and from each of the defendants. The court then stated to the defendants:

"Each of you young men have stood before me today and told some stories in which there are obvious conflicts. You have also advised me that you have fully disclosed your entire past criminal records, and you have done so under oath.

The court is well aware from the probation report of the family responsibilities that some of you have, of the fact that your criminal records as disclosed to this court, your past criminal records, certainly do not indicate a lengthy involvement with crime. But it would be of great assistance to the Court, in view of the conflicts in your testimony, if the Court might have the assistance of some verification of your stories.

So I am going to suggest to each of you, and it is only a suggestion, you do not have to do it, I am going to suggest to each of you that you submit yourself to a lie detector test. I am going to give you some time this afternoon to confer with your Counsel and to think it over. You do not have to take a lie detector test; however, I am advising you at this time that if you take the lie detector test, and if it does disclose that you are involved in any other criminal activities, that any and all information which the examiner finds from such an examination or from his conference with you will be turned over to the proper authorities, and you can be prosecuted for such offenses.

In other words, I am in no way indicating to you that you will get any immunity whatsoever, but whether or not you take a lie detector test is entirely up to you. I am not in any way requiring it; I am simply suggesting it, and in view of your statements under oath and in view

of your conflicts in this testimony here today, it would be helpful to this court, and I am going to declare a five-minute recess and let you confer with your attorney privately in one of the conference rooms, and then advise the court whether or not you want to do so.

All right, we will recess for five minutes."

After a short recess, the defendants stated their willingness to submit to the test. The court instructed the police and the State's Attorney's office to make the arrangements for the test and added,

"* * * I want you to alert the police department of Highland Park and of McHenry and any of the other areas if they have any unsolved crime, that information should be given to the polygraph examiner for use in examining these young men."

The defendants were then released on bond and the matter continued for approximately six weeks. However, later on the same day of the hearing, defendants' counsel advised the court that the defendants did not wish to submit to the test. The judge then revoked the defendants' bonds and issued warrants for their arrest. When the hearing was reconvened the court, without hearing further evidence, sentenced the defendants Dick E. Ackerman and Richard A. Kunz to a term of 1 to 5 years, and the defendant David H. Ackerman to a term of 3 to 6 years.

The argument of defendants that the court committed reversible error in suggesting that they take lie detector examinations proceeds from an analogy based upon the statutory enactment proscribing the request or suggestion that a defendant submit to a polygraph detection test "in the course of any criminal trial" (Ill. Rev. Stat. 1969, ch. 38, par. 158), as interpreted in *People v. Nimmer* (1962), 25 Ill.2d 319, 320, 321. Defendants contend that our courts have spoken out against the use of the polygraph as untrustworthy evidence of guilt or innocence of an accused (See *People v. Zazzetta* (1963), 27 Ill.2d 302, 306—309; *People v. Triplett* (1967), 37 Ill.2d 234, 238, 239; *People v. Boney* (1963), 28 Ill.2d 505, 510; *People v. Hill* (1965), 64 Ill.App.2d 185, 192, 193), and that the same considerations preclude the court from allowing itself to be influenced by the taking, or the failure to take the examination at any stage of the criminal proceedings. The defendants also argue that the suggestion that they possibly incriminate themselves as to proceedings not even pending before the court as a condition of their being given considerations of leniency in the sentencing proceedings is offensive and constitutionally impermissible.

The State urges that the statute (ch. 38, par. 158, *supra*) applies only to the *trial* and not to proceedings following a judgment of guilt; that a sentencing judge should obtain the fullest possible information to assist in the determination of the penalty; that the court did not abuse its dis-

cretion in denying probation under the facts adduced at the hearing nor in the imposition of sentence; that there is no indication in the record that the court took the refusal of the defendants to take the polygraph examination into consideration; and that since the defendants were not compelled to take the test no constitutional questions became involved. ■■■ It is, of course, true that a defendant has no constitutional or statutory right to probation and that its denial is within the sound discretion of the trial court which will not be disturbed unless clearly abused. (*People v. Smice* (1968), 92 Ill.App.2d 83, 86.) The authorities also consistently have held that, in determining the degree of punishment to be inflicted, the courts are not bound by the usual rules of evidence but may search anywhere within reasonable bounds for facts which may tend to aggravate or mitigate the offense. (*People v. Mann* (1963), 27 Ill.2d 135, 139; *People v. Adkins* (1968), 41 2d 297, 301.) "However, before relying on such information the judge must determine its accuracy * * * and he must take care to shield his mind from what might be the prejudicial effect of unreliable and other improper evidence * * *". *People v. Crews* (1967), 38 Ill.2d 331, 337.

■■ Sentencing proceedings affect substantial rights of a criminal accused and are therefore critical stages of criminal prosecutions to which the courts have extended fundamental rights of due process. (*Mempa v. Rhay* (1967), 19 L.Ed.2d 336, 340; *People v. Vesley* (1967), 86 Ill.App.2d 283, 288.) While evidentiary rules may be relaxed to some reasonable extent at the sentencing stage in the interest of securing the fullest dimension of background information concerning the person and the crime, we do not believe that polygraph evidence in its present stage of development, as to which there has been manifested "strong aversion * * * by statute and decisions" (*People v. Triplett*, 37 Ill.2d 234, *supra*, at page 239), should be either used or its use suggested at the sentencing stage of criminal proceedings. While the sentencing procedures are not intended to be conducted with strict formality,[1] they are yet for the purpose of reaching the truth of the matter which by affecting the issues of aggravation and mitigation determine the resulting sentence. In this sense the use or suggested use of a process which has not been considered a valid method of determining truthfulness would seem

---

[1] The commentary appended to the American Bar Association Suggested Standards for Sentencing Procedures (Standards relating to Sentencing Alternatives and Procedures, Sec. 54) while opting for informal procedures, yet suggests,
"only in the rare case where there is a factual dispute over a matter which is deemed important to the sentencing decision will there be the need for reception of evidence in the formal sense. And that case, of course, is precisely the case in which evidence ought to be received". (Page 254)

to be no more reliable or valid in the sentencing proceedings than in the determination of guilt or innocence.

■■ We are mindful of the fact that the able and conscientious trial judge did not allude to the defendants refusal to take the lie detector examination in his pronouncement of sentence. We must also note, however, that prior to the suggestion to defendants, the court alluded to its awareness that the past criminal records of the defendants did not indicate a lengthy involvement with crime, and noted that it "would be of great assistance to the court" to have a verification of defendants conflicting stories; and that immediately upon learning of defendants change of mind and refusal to take the test the court revoked bond and thereafter heard no further evidence to resolve the conflicts. On this state of the record, we believe that the court, prior to making the suggestion did not have an unalterable or conclusive conviction of the appropriate sentence he would adjudicate without deferring his final judgment to a dependence on the results of a polygraph test. The mere suggestion of a test as noted in *Nimmer*, 25 Ill.2d 319, *supra*, at page 321 (although there referenced to guilt rather than to sentence) demonstrates this. We must conclude that the refusal to take the test could not be shielded from the court's mind in making his decision and must have had some undetermined influence on the final judgment.

We are further of the opinion that the suggestions by the court that the examination should include any unsolved crime in the area, as to which constitutional rights against self-incrimination were to be considered waived, compounded the error which we have found in the suggestions by the court that the defendants voluntarily submit to the polygraph examination.

In this view we do not consider the further claim of the defendant David H. Ackerman that his sentence was disproportionate to that of the remaining defendants.

We vacate the sentences below and remand the cause on the pleas and judgments of guilt, for sentencing procedures consistent with this opinion.

Sentences vacated and cause remanded with directions.

T. MORAN, P. J., and ABRAHAMSON, J., concur.