The People of the State of Illinois, Plaintiff-Appellee, *v.* James Ramsey, Defendant-Appellant.

(No. 73-196;

Second District—January 24, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz and Martin Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted of armed robbery in a jury trial and was sentenced to 11-33 years in the penitentiary. He appeals only from the sentence and asks that the case be remanded for a new sentence hearing based upon his contention that the judge considered improper matters arising from a personal investigation of the defendant's conduct in the county jail.

In the course of the hearing in aggravation and mitigation the trial judge stated for the record that defendant, while in the county jail awaiting trial, had written to him complaining of treatment in the jail and claiming that he had been incarcerated "in the hold" for 72 hours without any water. The judge related that he called in a jail officer in the temporary absence of the warden and was shown the contents of a report which the jailer assured him was factual. These jail reports, required to be kept by the warden, detailed the conduct of prisoners while incarcerated. The judge said it appeared from the report that the defendant had been a constant problem while in jail:

"He harasses the other prisoners, remains up most of the night, pulls bankets off the prisoners, pounds them to keep them awake, and even pulls them out of their bunks, and if he can do it, he steals their food and this is as of that date, steals their personal belongings. They tried to reason with him in the beginning and then he started to threaten and harass the guards and they started to put him in the hold. As of this date, I do not know how many times he has been in the hold, which is, as you know, what they

call solitary confinement, but it was my understanding when the Warden, as you know was hospitalized about that time for the removal of a kidney and he couldn't come back for a considerable period of time, and when he came back, he came up to talk to me about it because Corporal Eye reported it to him and during that period of time we had one of the other prisoners in who testified that he had been struck by the defendant and of course he claimed he didn't do anything to incite the striking.

You are right, the man has been in jail for a considerable period of time. As you know, we had all kinds of motions on this case, the case was continued from time to time at the request of all three defense counsel—"

The judge then, in alluding to the circumstances of the armed robbery and the fact that the defendant had committed the offense while on probation for burglary, stated:

"To me, I must agree that my reaction to this young man, in view of what happened in the jail, in view of the failure of this young man to take advantage of a five-year probationary period, is apparent. I don't know if it is a complete disregard of authority as shown over the period of time, or what it is, but I do not believe that this young man is amenable at the present time to any light sentence."

At this point the defendant's counsel sought to minimize the defendant's conduct in jail by noting that, while he was confined, the defendant had no exercise and this lack of exercise was particularly destructive to one with a personality of the defendant. He also argued that a large spread between the stated minimum of 4 years and the maximum would be a proper answer to a concern for the defendant's rehabilitation potential.

The judge's response included:

"The Court has considered the arguments of counsel, has reviewed the notes that the Court has made and particularly the notes made with regard to the investigation that the Court undertook after receiving the letter from Mr. Ramsey in October of 1972 * * * and the Court feels that having had the benefit of the case history, the investigation by the Probation Department and the review of the other files and notes that the Court has heretofore referred to, the Court is now ready to enter sentence * * *."

The defendant argues that the judge, by considering ex parte converations with witnesses in a nonadversary setting and considering a hearsay report, went beyond the statutory deadlines set forth for sentencing hearings. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—4—1(a).) And

that the judge, in effect, based the sentence upon information collected upon his own motion and not presented by a means recognized as due process in judicial proceedings. The State notes that the inquiry was initiated by the defendant who did not object to the court's recital of the facts nor deny them. It contends that the inquiry made by the court was relevant to the issue involved in sentencing and that the entire record supports the sentence imposed which was within the statutory limits.

In our view the Unified Code of Corrections does not substantially change procedural standards for sentencing hearings which have been well established in previous case law, except to require the presentation of a presentence report and to allow the defendant an opportunity to inspect its content (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—3—1, 1005—3—4). The sentencing judge may look to the facts of the crime and may search anywhere within reasonable bounds for other facts which tend to aggravate or mitigate the offense without being bound strictly by the rules of evidence which apply to the guilt finding process. (*People v. Adkins* (1968), 41 Ill.2d 297, 301; *People v. Loomis* (1971), 132 Ill.App.2d 903, 905.) Hearsay evidence may be considered. *People v. Dennis* (1970), 47 Ill.2d 120, 135. See also *People v. Holmes* (1973), 12 Ill.App.3d 713, 719; *People v. McDaniel* (1972), 8 Ill.App.3d 45, 46.

There are, however, limits to the procedures employed by the court at the presentence hearing in acquiring relevant background information. Sentencing procedures affect substantial rights of a criminal accused to whom the fundamental rights of due process are extended. (*Mempa v. Rhay* (1967), 389 U.S. 128, 137, 19 L.Ed.2d 336, 342, 88 S.Ct. 254; *People v. Ackerman* (1971), 132 Ill.App.2d 251, 254.) In the exercise of the judge's sentencing discretion he must exercise care to insure the accuracy and propriety of the materials considered. (*People v. Crews* (1967), 38 Ill.2d 331, 337; *People v. Loomis* (1971), 132 Ill.App.2d 903, 905.) Under certain circumstances this may require that the materials which form a part of the judge's process of determining the sentence be made available to defendant and the sources of the information also made available so that they may be subjected to cross-examination. *People v. Crews* (1967), 38 Ill.2d 331, 338.

Here, an investigation of the defendant's complaint of mistreatment while in jail awaiting trial was warranted. But it was an improper procedure for the judge to merely satisfy himself, as he apparently did, as to the factual background resulting from his inquiry. The judge should properly have tendered to the defendant the right and opportunity to subject the facts resulting from the inquiry to an in-court testing of the accuracy of the information since the conclusions reached, by the judge's own admission on the record, were considered in his decision.

■ The defendant, however, initiated the inquiry by his letter to the judge and did not object either personally or by counsel to the procedure followed or challenge the accuracy of the facts stated. His failure to object amounts to a waiver of that error on appeal if the error did not result in the denial of any substantial rights. See Ill. Rev. Stat. 1973, ch. 110A, par. 615(a).

■ The defendant did not challenge the judge's statement of the facts as to his conduct in jail, and while the court did not invite the defendant or his counsel to present a rebuttal, there was an opportunity for each of them to do so. In fact, counsel responded not by questioning the information but by seeking to explain the conduct without disagreeing with the facts. In addition, the propriety of the judge's sentence determination is buttressed by the consideration of the defendant's use of a sawed-off shotgun to commit the armed robbery while he was still on probation for a prior conviction of burglary and his unemployment since March of 1969 with a record of heroin addiction. On the whole record we conclude that the court's procedural error has not resulted in the denial of any substantial rights of the defendant and that the judge did not abuse his discretion in the imposition of the 11-33 year sentence.

We, therefore, affirm the judgment below.

Affirmed.

T. MORAN and RECHENMACHER, JJ., concur.