James **MELVIN**, Defendant
Below, Appellant,

v.

**STATE of Delaware, Plaintiff
Below, Appellee.**

Supreme Court of Delaware.

Submitted: Jan. 21, 1992.
Decided: March 11, 1992.

Sandra W. Dean, Public Defender's Office, Dover, for appellant.

Loretta Young–Lloyd and James V. Apostolico, Dept. of Justice, Dover, for the State.

Before MOORE, WALSH and HOLLAND, JJ.

MOORE, Justice.

The appellant, James Melvin ("Melvin"), a juvenile, was charged with possession of cocaine and possession with intent to deliver cocaine. Melvin was convicted of pos-

session of cocaine and committed to the Ferris School for an indefinite period.[1]

Melvin claims that: (a) the trial court improperly relied on his refusal to take a polygraph test, and (b) the evidence presented by the State was insufficient to support a conviction for possession of cocaine.

We find the trial court's reliance on Melvin's refusal to submit to a polygraph test violates Melvin's constitutional right against self-incrimination under the United States and Delaware Constitutions. Accordingly, we reverse.

### I.

On February 26, 1991, Trooper Charles Mollet ("Mollet") was dispatched to Palmer Park in response to a complaint of loud music and persons in the roadway. Trooper Alfred Park, Jr. ("Park") accompanied Mollet in a separate car as backup.

Upon entering Palmer Park, Mollet saw Melvin standing near the open hatchback of an unoccupied car. The hatchback contained a radio and a large speaker. Several other individuals were present in and near the roadway but they were at least 18 feet away from Melvin's location. Mollet beamed his lights on Melvin from approximately 25 to 30 feet away and saw Melvin drop his hands to his side, open his fingers, drop something on the ground, and quickly walk away. Melvin then returned to the car to remove his speaker which was located in the car's hatchback. Mollet approached Melvin and found five caps of cocaine on the ground where Melvin had been standing.

Melvin was charged with possession of cocaine and possession with intent to deliver cocaine. As a juvenile, Melvin was tried in the Family Court. Mollet and Park testified for the State. Melvin called no witnesses and introduced no evidence on his behalf. Melvin's sole defense was that the State had not produced evidence sufficient to convict him of the offenses charged.

---

1. Melvin was granted a stay of execution of his sentence and is free on bond pending the outcome of this appeal.

The State responded that Melvin was in possession of the cocaine before he threw it on the ground and the circumstantial evidence presented established Melvin's guilt beyond a reasonable doubt. The court then took a short recess.

When the court reconvened, the judge expressed his reluctance to find any juvenile guilty and stated the following:

> I'm going to give this boy an opportunity to prove me wrong if he was [sic] to submit to a polygraph test. You [Melvin's counsel] talk to him about it and the issue was did he have possession of the items that are in evidence immediately or prior to the arrival of the police officers. Now, some people don't believe in those tests but I accept them. I've made this offer several times to many people and before I pronounce my findings I'll give him an opportunity to prove his case.
>
> \* \* \* \* \* \*
>
> If he shows no deception and the tests indicate that he did not have possession of those items, then the charge is dismissed. If he shows deception, then I enter my finding. So I don't want to announce that finding in advance but I think most of you here can pretty well tell what it's going to be.
>
> \* \* \* \* \* \*
>
> I'm giving him an opportunity if he wants it. You can talk and tell me in the next five minutes. If he changes his mind and doesn't want it [the polygraph test], I'll render my finding and we'll go from there.

The court then took a short recess.

When the court reconvened, Melvin's counsel informed the judge that Melvin agreed to take a polygraph test. The court then continued the case pending receipt of the polygraph test results.

The court reconvened on June 17, 1991. Melvin's counsel informed the court that, upon counsel's advice, Melvin decided not to take the polygraph test. In addition, counsel objected to the admission into evidence of any reference to a polygraph or Melvin's refusal to submit to a polygraph. Without response to counsel's objection, the court immediately found Melvin guilty of possession of cocaine and stated "I gave him an opportunity to clear himself." Melvin was committed to Ferris for an indefinite period of time.

## II.

### A.

Melvin contends that the trial court's suggestion that he submit to a polygraph test, and its reliance on his refusal to do so, constitutes reversible error.

■ It has long been recognized that in Delaware, as in many other jurisdictions, polygraph examinations are inadmissible for any purpose because their scientific reliability has not been established. *See, e.g., Foraker v. State,* Del.Supr., 394 A.2d 208, 213–14 (1978) (citing cases); 3 Charles E. Torcia, *Wharton's Criminal Evidence* § 593 (1987) (collecting cases). A limited exception to this general prohibition exists when the prosecution and the defendant both stipulate to the admissibility of polygraph evidence. *Thompson v. State,* Del. Supr., 399 A.2d 194, 198 (1979); *Williams v. State,* Del.Supr., 378 A.2d 117, 120 (1977). Here, there was no stipulation to the introduction of polygraph evidence, and it was improper for the trial judge to suggest that Melvin submit to a polygraph examination.

### B.

■ The trial judge's reliance on Melvin's refusal to submit to a polygraph examination violates Melvin's constitutional right against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution and Article I, Section 7 of the Delaware Constitution. The protection of the privilege covers an accused's communications, whatever form they might take. *Schmerber v. California,* 384 U.S. 757, 763–64, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966). However, the privilege only applies to testimonial evidence as distinguished from physical evidence. *United States v. Moore,* 466 F.2d 547, 548 (3d Cir.1972), *cert. denied,* 409 U.S. 1111, 93 S.Ct. 920, 34 L.Ed.2d 692 (1973). Thus, the

issue becomes whether submission to a polygraph test amounts to testimonial evidence within the Fifth Amendment's protection.

▮ In *Schmerber*, the United States Supreme Court discussed, in dicta, what types of tests were protected by the Fifth Amendment's privilege against self-incrimination. When discussing lie-detector tests the Supreme Court stated that "[t]o compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological responses, whether willed or not, is to evoke the spirit and history of the Fifth Amendment." *Id.* at 764. This dicta has been adopted by a number of courts. *See, e.g., People v. Ellis*, 65 Cal.2d 529, 55 Cal. Rptr. 385, 389 & n. 9, 421 P.2d 393, 397 & n. 9 (1966) (finding lie detector tests as within the Fifth Amendment privilege); *People v. Starks*, 106 Ill.2d 441, 88 Ill.Dec. 35, 478 N.E.2d 350 (1985) (defendant's submission to polygraph examination constitutes waiver of privilege against self-incrimination). We agree with those jurisdictions which hold that polygraph examinations are testimonial for purposes of the Fifth Amendment and, therefore, are subject to an individual's protection against self-incrimination.

Melvin's refusal to take a polygraph examination does not cure the constitutional error present here. Evidence that an individual refused to submit to a polygraph test is no more permissible than forcing an accused to submit to a polygraph examination and then using the results against him or her. *See Duonnolo v. State*, Del.Supr., 397 A.2d 126, 132 (1978) (testimony that an accused refused to take a polygraph test amounts to an impermissible comment upon the defendant's Fifth Amendment right to remain silent). As the Sixth Circuit succinctly stated: "a statement suggesting that a criminal defendant either took and failed a polygraph examination or refused to take an examination directly relates to guilt and implicates a defendant's Fifth Amendment right not to incriminate himself." *United States v. Walton*, 908 F.2d 1289, 1293 (6th Cir.1990), *cert. de-*

*nied*, — U.S. ——, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). Accordingly, we find that the trial court's reliance on Melvin's refusal to submit to a polygraph test to be violative of Melvin's constitutional right against self-incrimination.

### C.

▮ The State's only response to Melvin's contentions is that the trial judge did not, in fact, rely upon the defendant's refusal to submit to a polygraph test. To the extent that Melvin's constitutional rights were violated, the State contends that any error which did exist was "harmless." Specifically, the State contends that the trial court had already found Melvin guilty before affording him the opportunity to take a polygraph test. Therefore, Melvin's refusal to take such a test did not affect the outcome of the case.

In applying a harmless error analysis, this Court has held that reversal is required whenever the reviewing court "cannot say that the error was harmless beyond a reasonable doubt." *Van Arsdall v. State*, Del.Supr., 524 A.2d 3, 11 (1987) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). We cannot say that the trial court's error in this case was harmless beyond a reasonable doubt. The trial judge specifically stated that "I accept [polygraph tests]." Moreover, the trial judge found Melvin guilty immediately upon learning of his refusal to take the polygraph test. *Cf. People v. Ackerman*, 132 Ill.App.2d 251, 269 N.E.2d 737 (1971) (when trial court sentenced defendants immediately upon learning of their refusal to take polygraph tests, appellate court found that defendants' refusal must have had some influence on the sentences imposed).

### III.

▮ We find the trial judge's ruling to be inextricably linked to Melvin's refusal to submit to a polygraph examination. In addition, because the Family Court Judge in this case already expressed his belief as to Melvin's guilt, he is thereby disqualified from adjudicating further proceedings in

this matter. Accordingly, the judgment of the Family Court is REVERSED and the case REMANDED for a new trial consistent with this opinion before a different Family Court Judge.[2]

---

**2.** Because we reverse Melvin's conviction, we need not address the issue of the sufficiency of the evidence produced by the State at Melvin's trial.

