# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

LEON POWELL,                          )
                                      )
        v.                            )
                                      )
STATE OF DELAWARE,                    )    ID NO. 82007195D1
                                      )


Date Submitted: February 16, 2015
Date Decided: March 16, 2015

On Defendant's Motion for Postconviction Relief. **DENIED.**
On Defendant's Motion for Appointment of Counsel. **DENIED.**

## <u>ORDER</u>


Leon Powell, *pro se* Appellant.


Joseph S. Grubb, Esq., Deputy Attorney General, Delaware Department of Justice, Carvel State Office Building, 820 N. French Street, Wilmington, Delaware 19801. Attorney for the State.


**Scott, J.**

## Introduction

Upon remand from the Delaware Supreme Court, the Honorable John A. Parkins, Jr. entered an order on February 16, 2015, recusing himself from decision on Defendant Leon Powell's ("Defendant") Motion for Postconviction Relief and Motion for Appointment of Counsel. Now before the Court are Defendant's Motion for Postconviction Relief and Motion for Appointment of Counsel, filed on October 7, 2014. The relief sought by Defendant is for a reduced sentence in accordance with Murder Second Degree instead of Murder First Degree. For the following reasons, Defendant's Motion for Postconviction Relief and Motion for Appointment of Counsel are **DENIED**.

## Background

Defendant was indicted by a Delaware grand jury in 1982 on the charge of non-capital Murder First Degree.[1]

During trial, Defendant challenged the inadmissibility of a polygraph examination Defendant had taken, which was administered by the Public Defender's Office. The Court conducted a colloquy with Defendant, his counsel, and the State, outside the presence of the jury to resolve this matter. As a result of the colloquy, the Court ruled that the result of Defendant's polygraph were inadmissible.

---

[1] Pursuant to 11 *Del. C.* § 636 of the Delaware Code of 1974.

Defendant was subsequently convicted by a jury on the charge of Murder First Degree for intentionally causing the death of Aaron Portlock on November 2, 1982 by stabbing him in the back. On June 16, 1983, Defendant was sentenced on the Murder First Degree conviction to life imprisonment without the possibility of probation or parole.

On June 24, 1983, Defendant appealed his conviction to the Delaware Supreme Court on the basis that the trial court erred in denying Defendant's motion for a mistrial prompted by the State's conduct during its cross-examination of Defendant at trial. The Delaware Supreme Court issued a mandate affirming Defendant's conviction on October 17, 1983.

On October 7, 2014, Defendant filed a *pro se* Motion for Postconviction Relief and Motion of Appointment of Counsel. The Honorable John A. Parkins, Jr. denied Defendant's motion for appointment of counsel and dismissed his motion for postconviction relief on November 24, 2014. Defendant both appealed the Court's decision to the Delaware Supreme Court and filed a Motion to Recuse Judge Parkins in Superior Court. Unopposed by the State, the Delaware Supreme Court remanded Defendant's motion for postconviction relief and motion for appointment of counsel to Superior Court for decision on January 16, 2015.

## Standard of Review

Upon a motion for postconviction relief, the Court must first determine if any of four procedural bars to relief apply under Del. Super. Ct. Crim. Rule 61(i)

3

before it can consider the merits of the underlying claim.[2]   A motion for postconviction relief can be barred for time limitations, repetitive motions, procedural defaults, and former adjudications.[3]   A motion exceeds time limitations if it is filed more than one year after the conviction is finalized or they assert a newly recognized, retroactively applied right more than one year after it is first recognized.[4]   A motion is considered repetitive and therefore barred if it asserts any ground for relief "not asserted in a prior postconviction proceeding."[5] Repetitive motions are only considered if it is "warranted in the interest of justice."[6]   Grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred as procedural default unless movant can show "cause for relief" and "prejudice from [the] violation."[7]   Grounds for relief formerly adjudicated in the case, including "proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus hearing" are barred.[8]   Former adjudications are only reconsidered if "warranted in the interest of justice."[9]

---

[2] *Panuski v. State*, 41 A.3d 416, 419 (Del. 2012); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[3] Super. Ct. Crim. Rule 61(i)(1)-(4).

[4] Super. Ct. Crim. Rule 61(i)(1).

[5] Super. Ct. Crim. Rule 61(i)(2).

[6] *Id.*

[7] Super. Ct. Crim. Rule 61(i)(3).

[8] Super. Ct. Crim. Rule 61(i)(4).

[9] *Id.*

4

The current version of Rule 61(i)(1), which governs the procedural bar regarding time limitations, states, "[a] motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court."[10] The one year limitation applies to cases in which the judgment of conviction became final after July 1, 2005.[11] However, prior to its amendment, Rule 61(i)(1) provided defendants *three* years after the judgment of conviction became final to file the motion.[12] "A judgment of conviction is final…[i]f the defendant files a direct appeal or there is an automatic statutory review of a death penalty, when the Supreme Court issues a mandate or order finally determining the case on direct review."[13]

According to Rule 61(i)(5), the Court may still consider an untimely motion when the defendant asserts "a claim that the court lacked jurisdiction or [] a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness

---

[10] Rule 61(i)(1).

[11] *State v. Nave*, 2005 WL 1953079, at *1, n.2 (Del. Super. July 29, 2005) *aff'd,* 888 A.2d 232 (Del. 2005).

[12] *See Id.*

[13] Rule 61(m)(2); *Guy v. State*, 82 A.3d 710, 715 (Del. 2013).

of the proceedings leading to the judgment of conviction.[14] However, this fundamental fairness exception "is a narrow one and has been applied only in limited circumstances, such as when the right relied upon has been recognized for the first time after the direct appeal."[15]

### Discussion

Both of Defendant's motions are procedurally barred under Rule 61(i)(1) for untimeliness. The judgment of conviction became final on the date of the Supreme Court's mandate, October 17, 1983. Under the pre-amendment version of Rule 61(i)(1), Defendant had until October 17, 1986 to file this motion;[16] however, Defendant did not file his motions until October 7, 2014. Moreover, Defendant has not asserted a retroactively applicable, newly recognized right. Nor has Defendant asserted "a colorable claim that there was a miscarriage of justice."[17] For these reasons, Defendant's motion for postconviction relief and motion for appointment of counsel are procedurally barred under Super. Ct. Crim. Rule 61(i)(1).

Assuming *arguendo* that Defendant's motion is not procedurally barred, it nonetheless fails on the merits. On this motion for postconviction relief, Defendant asserts three grounds for relief: (1) Defendant was erroneously charged

---

[14] Rule 61(i)(5).
[15] *Younger,* 580 A.2d at 555.
[16] *See Nave*, 2005 WL 1953079.
[17] *See* Rule 61(i)(5).

6

with Murder First Degree because there was no underlying felony offense to support a conviction for felony murder, as required under 11 *Del. C.* § 636; (2) the trial court abused its discretion by authorizing a polygraph for Defendant conducted by the Public Defender's Office when the results of the polygraph were not admissible at trial because polygraphs are not considered scientifically reliable; and (3) the State committed prosecutorial misconduct by consenting to the defense's administration of the polygraph of Defendant, despite knowing that the results of the polygraph were inadmissible because polygraphs are not considered scientifically reliable.

Foremost, Defendant misinterprets the requirements for a charge of Murder First Degree under 11 *Del. C.* § 636. Section 636(a) provides that a person is guilty of murder in the first degree when any one of the following six enumerated requirements is satisfied:

> (1) The person intentionally causes the death of another person;
> (2) While engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, the person recklessly causes the death of another person.
> (3) The person intentionally causes another person to commit suicide by force or duress;
> (4) The person recklessly causes the death of a law-enforcement officer, corrections employee, fire fighter, paramedic, emergency medical technician, fire marshal or fire police officer while such officer is in the lawful performance of duties;
> (5) The person causes the death of another person by the use of or detonation of any bomb or similar destructive device;
> (6) The person causes the death of another person in order to avoid or prevent the lawful arrest of any person, or in the course of and in

furtherance of the commission or attempted commission of escape in the second degree or escape after conviction.

In this case, Defendant misinterprets the scope of the legislative intent for § 636 as exclusively requiring the killing to be in the furtherance of the commission of an underlying felony. While Defendant correctly characterizes the requirements of felony murder,[18] his argument fails because felony murder is only one of the six enumerated ways to satisfy a charge of Murder First Degree. Defendant was properly charged with Murder First Degree for intentionally causing the death of Aaron Portlock by stabbing him in the back because § 636(a)(1) provides that a person is guilty of murder in the first degree when he intentionally causes the death of another person. Therefore, the State was not required to assert or prove that Defendant caused the death of Aaron Portlock in the furtherance of committing an underlying felony. As such, Defendant's argument fails on the merits.[19]

Furthermore, Defendant's arguments as to the administration and admissibility the polygraph also fail on the merits. It is well settled in Delaware

---

[18] *See* 11 *Del. C.* § 636(a)(2).

[19] In supplemental briefing, Defendant also asserts that he was wrongly charged with and sentenced under capital Murder First Degree because there the indictment was reduced to non-capital Murder First Degree, no special circumstances were presented to support a capital murder conviction, and the jury was not death qualified. However, while Defendant correctly identifies the requirements of a statutory aggravating factor and a death qualified jury for a charge of capital murder in the first degree, Defendant again misinterprets 11 *Del. C.* § 636 as *exclusively* providing for capital Murder First Degree. Section 636 provides only the requirements for satisfying a charge of Murder First Degree, whereas 11 *Del. C.* § 4209 provides for the determination of punishment upon conviction for Murder First Degree. Moreover, at all times, Defendant was properly charged with, tried for and convicted of non-capital Murder First Degree, which carries a mandatory sentences of life imprisonment without the possibility of probation or parole.

8

law that the results of polygraph examinations are "inadmissible for any purpose because their scientific reliability has not been established."[20] Similarly, polygraph evidence is never admissible if it is offered to establish that a witness' version of the events is true.[21] These rules reflect a legitimate concern that jurors will assume that the results of the polygraph are accurate and will therefore accept the witness' testimony as the truth.[22] In other words, the concern is that a potentially unreliable polygraph test will take the place of the jury in assessing the credibility of witnesses.[23] Thus, without prior agreement of the parties, polygraph examinations are presumed inadmissible.[24]

---

[20] *Foraker v. State,* 394 A.2d 208, 213 (Del. 1978) (citations omitted); *see Melvin v. State,* 606 A.2d 69, 71 (Del. 1992); *Whalen v. State,* 434 A.2d 1346, 1354 (Del. 1981). While several federal courts were forced to abandon a strict rule prohibiting the admission of polygraph test results after the United States Supreme Court decision in *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993), these courts have retained a strong suspicion of polygraph evidence. *See, e.g., United States v. Cordoba,* 104 F.3d 225, 227–28 (9th Cir. 1997) ("With this holding, we are not expressing new enthusiasm for admission of unstipulated polygraph evidence. The inherent problematic nature of such evidence remains.... [P]olygraph evidence has grave potential for interfering with the deliberative process."); *United States v. Posado,* 57 F.3d 428, 431–34 (5th Cir. 1995) ("[W]e do not now hold that polygraph examinations are scientifically valid or that they will always assist the trier of fact, in this or any other individual case.").

[21] *Capano v. State*, 781 A.2d 556, 592 (Del. 2001).

[22] *Id.*

[23] *See Holtzman v. State,* 1998 WL 666722 (Del. July 27, 1998) (ORDER), Order at ¶ 14 ("A fundamental premise of our criminal trial system is that 'the jury is the lie detector.'"); *United States v. Alexander,* 526 F.2d 161, 168 (8th Cir. 1975) ("When polygraph evidence is offered in evidence at trial, it is likely to be shrouded with an aura of near infallibility, akin to the ancient oracle of Delphi.").

[24] *Whalen*, 434 A.2d at 1354 (This holding preserves the rule prohibiting "the use of the results of a polygraph test without prior agreement of the parties."); *see State v. Perry*, 142 N.W.2d 573 (Minn. 1966) (holding any reference to a polygraph test, without prior agreement of the parties, is improper).

In this case, the Court did not abuse its discretion in authorizing to administration of Defendant's polygraph by the Public Defender's Office, nor was it prosecutorial misconduct for the State to consent to the polygraph, despite the presumption of inadmissibility. Defense counsel explained to Defendant that the State was entitled to reject or ignore the results of the polygraph, and that if the State exercised that right, the results would not be admissible at trial.[25] Moreover, the State informed defense counsel prior to the examination that the polygraph was not evidence, and that defense counsel could present the results of the polygraph to the State, but the State made no promises as to whether it would stipulate to their admissibility.[26] Thus, it was properly within the State's discretion to reject the polygraph results, regardless of briefing or an evidentiary hearing on the matter.[27] Nonetheless, the State provided reasonable justification for its decision.[28] In that vein, the trial court did not abuse its discretion by authorizing the polygraph because the State had consented to it and it was within the State's discretion to stipulate to its admissibility. For these reasons, Defendant's arguments regarding the administration and admissibility of the polygraph examination fail on the merits.

---

[25] Trial Transcript at 203-04.

[26] *Id.* at 204-05.

[27] *See Whalen*, 434 A.2d at 1354 (Prohibiting "the use of the results of a polygraph test without prior agreement of the parties.").

[28] During the colloquy to resolve this issue, the State offered that defense counsel presented it with the polygraph results, which included both favorable and non-favorable results, and that the State declined to accept the results of the polygraph entirely because it questioned the veracity of polygraph examinations. Trial Transcript at 205.

Defendant also filed a motion for appointment of counsel.  Defendant appears to argue that the Court's decision in *Holmes v. State*[29] created a newly-recognized retroactive right to counsel in order to overcome the procedural bars of Superior Court Criminal Rule 61(i), requiring this Court to appoint Defendant counsel, as this is his first motion for postconviction relief.  However, Defendant's argument misreads *Holmes* because the Delaware Supreme Court has held that there is neither a federal nor a state constitutional right to counsel in a postconviction proceeding.[30]  The Delaware Supreme Court in *Roten v. State*[31] held that

> The United States Supreme Court held in *Martinez v. Ryan*[32] that inadequate assistance of counsel during initial postconviction proceedings may establish cause for a defendant's procedural default of a claim of ineffective assistance of counsel at trial in pursuing federal habeas corpus relief. Contrary to [the defendant's] contention, *Martinez* does not hold that there is a federal constitutional right to counsel in first postconviction proceedings.  Furthermore, [the defendant] misreads this Court's decision in *Holmes v. State.*  In *Holmes,* we held that the Superior Court abused its discretion in denying Holmes' motion for the appointment of counsel to assist him in his first postconviction proceeding. We remanded for the appointment of counsel under the Superior Court's new Criminal Rule 61(e), which allows for the appointment of counsel in first postconviction proceedings. The rule was adopted May 6, 2013 and is *not* retroactive. We did not hold in *Holmes* that a right to counsel in first postconviction proceedings exists as a matter of Delaware constitutional law.[33]

---

[29] 67 A.3d 1022 (Del. 2013).
[30] *State v. Grayson*, 2014 WL 4058485, at *3 (Del. Super. Aug. 14, 2014).
[31] 80 A.3d 961 (Del. 2013).
[32] 132 S.Ct. 1309 (2012).
[33] *Roten*, 80 A.3d at 961.

In this case, Defendant's motion is procedurally time-barred under Rule 61(i)(1) for the reasons above. Moreover, the right to counsel on Defendant's first motion for postconviction relief under *Holmes* does not apply retroactively.[34] Thus, Defendant has not asserted a retroactively applicable newly recognized right to justify exception to the time bar. Furthermore, as discussed in addressing Defendant's substantive arguments, Defendant has not provided any factual support or legally viable argument which would justify granting exception to the time bar and the relief sought. Accordingly, Defendant has failed to satisfy his burden for appointment of counsel.

## Conclusion

For the foregoing reasons, Defendant's Motion for Postconviction Relief and Motion for Appointment of Counsel are **DENIED**.

**IT IS SO ORDERED.**

*/s/ Calvin L. Scott*
**Judge Calvin L. Scott, Jr.**

---

[34] *See Holmes*, 67 A.3d 1022; *see Roten*, 80 A.3d at 961.

12