(No. 36837.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT ZAZZETTA, Plaintiff in Error.

*Opinion filed March 22, 1963.*

FEARER & NYE, of Rochelle, (PHILIP H. NYE, JR., of counsel,) appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WAYNE R. BETTNER, State's Attorney, of Oregon, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant, Robert Zazzetta, was indicted in the circuit court of Ogle County for burglary. He pleaded not guilty, was tried by a jury, found guilty, and sentenced to the penitentiary for a term of not less than two years nor more than five years. He prosecutes this writ of error from that judgment.

The service station-restaurant of Donald Peekin, located on U.S. Route 51 near the junction of that highway and Holcomb Road in Ogle County was burglarized between the closing time on the evening of November 2, 1960, and opening time in the early morning hours of November 3, 1960. Numerous small articles were taken from the restaurant and tools from the service station. The cook at the restaurant notified the owner of the burglary the next morning and the Ogle County sheriff's office was notified at approximately 7:15 A.M.

The defendant and one Donald Carl were arrested by the Rockford Police Department at about 5:30 A.M. on the morning of November 3, 1960, in an apartment in

Rockford, Illinois. The defendant, according to the record, was not committing any crime at the time of his arrest. He was handcuffed and the arresting officers searched his person and found a set of keys in his pocket. Officer Matthews testified that he asked the defendant what the keys were for and he had answered they were for a car downstairs. The officer then asked the defendant if he cared if he (the officer) went and looked at it and the defendant said no. The defendant was then taken to the police station and the officer that remained looked in the car and opened the trunk and found in the back seat and in the trunk many of the articles that had been taken from the service station-restaurant. The car was then brought in and placed in the police barn where subsequently the articles found in the car were connected with the burglary.

Defendant contends that the trial court committed error in admitting into evidence the results of a lie-detector test taken by the defendant pursuant to a purported stipulation. It is also his contention that the trial court erred in admitting testimony concerning the stolen goods found in the defendant's car, as the officers did not know of the burglary at the time that they arrested the defendant nor was he committing any crime at the time and, therefore, the arrest was illegal and the search incidental thereto unreasonable.

The State argues that the defendant knowingly and understandingly agreed that the results of the polygraph test, a test that he requested, might be introduced in evidence in the trial of the case, and having so stipulated he cannot be heard to complain. The State also insists that evidence obtained by the search was properly admitted because no motion to suppress was made prior to trial; the items seized were in plain sight, and the defendant consented to the search.

We first will consider the admission into evidence of the results of a polygraph or "lie detector" test. This is a

case of first impression in Illinois, and our decision must be based upon the particular facts presented to us. After defendant's arrest, he apparently contacted an attorney in Sycamore, Illinois. That attorney has never appeared of record for defendant, but apparently called the State's Attorney and suggested that defendant be given a polygraph test. Thereafter, defendant appeared in open court without counsel and was questioned by the court as follows:

"Q. Is it your desire to have the lie test?

A. Yes, sir.

\* \* \*

"Q. You heard the State's Attorney say in the event the result of the test is unfavorable to you, then you intend to enter a plea of guilty?

A. I didn't say that, no.

"Q. Or put it in another way, in the event that the test turns out to be unfavorable to you, and you still insist upon a jury trial, you are willing to stipulate in open Court that it will be perfectly proper for the State's Attorney to offer the result of the test in evidence on the trial of the case—you understand that clearly?

A. Yes, sir.

"Q. And you are so stipulating now?

A. Yes, sir."

Thereafter defendant took a polygraph test, and upon trial a report of the test was introduced in evidence over the objection of defendant. The report, which was admitted without foundation, read in part as follows:

"'There were significant emotional disturbances indicative of deception in this subject's polygraph records on the following questions:

(1) Were you with Donald Carl on that gas station burglary the night of November 2?

Answer: No.          (Filed Mar. 9, 1961

Morris M. Roe, Clerk)

(2) Did your burglarize Don Peekin's gas station the night of November 2?

Answer: No.

(3) Were you telling the truth when you signed that burglary confession?

Answer: No.

"It is the opinion of the examiner, based on this subject's polygraph records, that he is not telling the truth on the above listed questions."

In the absence of stipulation, our courts, without exception, reject the results of lie-detector tests when the same are offered in evidence for the purpose of establishing the guilt or innocence of one accused of a crime. (*People* v. *Jones,* (1962) 52 Cal. 2d 636, 343 P.2d 577; *Dugan* v. *Commonwealth,* (Ky., 1961) 333 S.W.2d 755; *Boeche* v. *State,* (1949) 151 Neb. 368, 37 N.W.2d 593; *People* v. *Dobler,* (1961) 215 N.Y.S.2d 313, 29 Misc. 2d 481; *State* v. *Smith,* (1947) 113 Ohio App. 461, 178 N.E.2d 605; *Henderson* v. *State,* (1951) 94 Okla Crim. 45, 230 P.2d 495.) The reason most commonly assigned for the exclusion of the results of a lie-detector test from evidence is the contention that the lie detector has not yet attained sufficient scientific acceptance as a reliable and accurate means of ascertaining truth or deception as to be acceptable in a court of law. The Oklahoma Criminal Court of Appeals in the leading case of *Henderson* v. *State,* 94 Okla. Crim. 45 at 54, 230 P.2d 495, which involved an attempt by the defendant to introduce into evidence the results of negative lie-detector and truth-serum tests, after an exhaustive review of the existing authority on the reliability of lie-detector and truth-serum tests, concluded: "It is therefore apparent that the efficacy of neither the lie detector or the truth serum test have gained that standing and scientific recognition nor demonstrated that degree of dependability to justify the courts in approving their use in the trial of criminal cases. Therefore, the trial court

was not in error in sustaining the State's objection to the defendant's tender of the results of such test to which he contends he consented."

A few courts have ruled inadmissible testimony in regard to lie-detector tests on the ground that no expert evidence had been introduced showing a general scientific recognition of the efficacy of such tests. (*People* v. *Becker,* (1942) 300 Mich. 562, 2 N.W.2d 503.) Other objections have been raised by the courts to the introduction of the results of lie-detector tests, in addition to that of the lack of scientific recognition. Some courts have claimed that the use of lie-detector tests would only serve to distract the jury. (*State* v. *Cole,* (1945) 354 Mo. 181, 188 S.W.2d 43.) Other courts claim that the introduction would permit the defendant to have extra-judicial tests made without the necessity of submitting to similar tests by the prosecution. (*State* v. *Bohner,* (1933) 210 Wis. 651, 246 N.W. 314.) Another objection is that a lie-detector test is not susceptible to cross-examination. (*State* v. *Lowry,* (1947) 163 Kan. 622, 185 P.2d 147.) There is no Illinois case which squarely meets the problem of the admission of the results of lie-detector tests into evidence.

There are so few cases which can be found regarding the admissibility of stipulated lie-detector tests that it is somewhat difficult to formulate any general rule concerning the same, other than that the courts show the same reluctance in admitting stipulated tests as they do any other type of lie-detector test. (*State* v. *Trimble,* (1961) 68 N.M. 406, 362 P.2d 788; *Colbert* v. *Commonwealth,* (Ky., 1957) 306 S.W.2d 825.) In *People* v. *Houser,* (1948) 85 Cal. App. 2d 686, 193 P.2d 937, it was held that where the defendant in a prosecution for a sex crime stipulated in writing that the entire results of a lie-detector test might be received in evidence on behalf either of the prosecution or of the defense, and that the operator of the lie detector was an expert operator and interpreter of results of such

test, the defendant could not object to the admission of such evidence on the ground that the operator was not an expert and that such evidence was inadmissible. In *State* v. *Lowry*, (1947) 163 Kan. 622, 185 P.2d 147, the court, by way of dictum, indicates that if the parties to a criminal action stipulate that the results of their lie-detector tests might be introduced in evidence at the trial, such evidence is admissible. *Fevre* v. *State*, (1943) 242 Wis. 416, 8 N.W.2d 288, held that the findings made by a lie-detector operator which were favorable to the defendant were properly excluded on objection by the State, despite a stipulation with the District Attorney which provided that the results might be admitted in any trial or proceedings. The court fails to discuss in detail the effect of such a stipulation. *Orange* v. *Commonwealth*, (1950) 191 Va. 423, 61 S.E.2d 267, points out that an agreement with the prosecuting attorney to truth-serum tests did not provide that the results of the test be given in evidence and further, that no evidence was submitted as to the character and quality of the drug administered or proof of the reliability of such tests.

It is defendant's contention that it is inconsistent for a court to affirm the unreliability of lie-detector tests and at the same time admit into evidence the results of a stipulated test. If such tests are as unpredictable and misleading as the courts are so certain they are, then their reliability and usefulness to the court and jury upon the ultimate question of guilt or innocence remains the same, regardless if they are admitted by stipulation or not. There are no cases on record in which a lie-detector test has been admitted by stipulation without the presence and qualification of the operator and interpreter of such tests as an expert witness during the trial. *State* v. *McNamara*, 252 Ia., 19, 104 N.W.2d 568.

The State defends the use of the polygraph results at the trial on the ground that parties may stipulate as to all or any part of a case. (*People* v. *Lehman*, 5 Ill.2d 337.)

They particularly rely on *State* v. *McNamara*, (Iowa) 104 N.W.2d 568, and *People* v. *Houser,* 85 Cal. App. 2d 686, where the results of polygraph tests were admitted pursuant to stipulation. In both cases it was pointed out that the defendant and his counsel entered into specific written stipulations permitting the use of the test results and admitting the qualifications of the operator and interpreter of the tests.

The posture of this case does not require us to either follow or reject *McNamara* and *Houser.* In the case at bar a letter was read to the jury, over objection, which clearly indicated that defendant lied when he denied the burglary. No evidence was introduced regarding the method of testing or the qualification of the operator. The expert was not available in person for cross-examination. This entire procedure is claimed to be justified by the oral agreement of the defendant, a man with an eighth-grade education, appearing without counsel prior to trial.

The scientific reliability of the polygraph has long been the subject of dispute among learned experts. Today we are not compelled to take sides in that argument which has not been presented to us. Suffice it to say, that it is common knowledge that the expertise of the operator and interpreter has substantial bearing on the reliability of the polygraph.

On the narrow issue presented to us, however, we feel that such a debatable expert opinion, with such obvious prejudicial impact, ought not be introduced by virtue of the oral stipulation presented in this case. While a defendant may understandingly stipulate to much in a criminal trial, and may waive many objections, we think it manifestly unfair to bind him by a stipulation regarding the trustworthiness of scientific opinion far beyond his expected ken. We, therefore, hold that the introduction of the results of the polygraph test in this particular case was error.

We next consider the admission of evidence allegedly

obtained by an illegal search of defendant's car. Evidence obtained as a result of a search without a warrant subsequent to an unlawful arrest is, of course, not admissible in evidence over proper objection. On this record it appears clear that defendant's arrest without a warrant was unjustified by any reasonable belief either that an offense had been committed, or that defendant was guilty of an offense. *People* v. *Galloway,* 7 Ill.2d 527, 534.

The State does not argue that the search followed a legal arrest, but contends that defendant cannot raise the issue of the admissibility of the evidence because the motion to suppress was not made until the trial was started. In support of this contention they cite *People* v. *Anderson,* 337 Ill. 310, 328, where we stated "Where it is claimed that evidence against one accused of crime has been obtained by an unlawful search of his house and seizure of his effects, the question of such unlawful search and seizure must be presented to the court before the trial, if possible." The record in this case shows that the defendant was represented by several appointed attorneys during the period before this trial and that no one of them remained as counsel for the defendant for any substantial length of time. Immediately after the beginning of the trial the defendant's trial counsel made a motion to suppress evidence which was heard and overruled. We believe that the motion was made as promptly as possible under the circumstances of this instant case, and was sufficient to raise the question of the legality of the search.

The State contends that no search of the car was necessary, as the articles were in plain view. However, it appears that the trunk of the defendant's car was opened and searched. We, therefore, feel that this contention is without merit. The cases cited by the State represent situations in which the goods seized were in open view in a place where the public had a right to be and are inapposite here.

The State also suggests in passing that defendant's con-

sent justified the search. We do not believe the record in this case justified this contention. We, therefore, feel that evidence was admitted which was seized as a result of an unlawful search; that sufficient timely objections were made; and that the trial court erred in allowing its admission.

Because of the foregoing conclusions, the judgment of the circuit court of Ogle County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*