THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILL CATER, JR., Defendant-Appellant.

Third District   No. 78-113

Opinion filed November 13, 1979.—Rehearing denied January 15, 1980.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

John X. Breslin, Terry Mertel, and Rita Kennedy, all of State's Attorneys Appellate Service Commission, of Ottawa, for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

On July 14, 1977, the defendant, Will Cater, Jr., then 16 years old, was apprehended by the Omaha, Nebraska, police for the offenses of armed robbery and aggravated kidnapping. The incident which resulted in the criminal prosecution arose out of Cater's participation in the July 13, 1977, commandeering of an automobile on Interstate Route 80 belonging to Robert Shook. Cater and his three companions, two armed with handguns, forced Shook to drive with them and accompany them to Nebraska. Cater, himself, was not armed and participated to the extent of driving the car for some time and also allegedly threatening the victim.

The defendant was the subject of a delinquency petition filed on July 15, 1977, which alleged that he committed both the offenses of armed robbery and aggravated kidnapping. Subsequently the Will County State's Attorney filed a motion to remove the case from prosecution under the Juvenile Court Act pursuant to section 2—7 (Ill. Rev. Stat. 1977, ch. 37, par. 702—7), and to transfer the case to be prosecuted under the criminal law. After a hearing the trial court granted the State's motion to transfer. Thereafter the defendant was indicted for the offenses of armed robbery and aggravated kidnapping by a Will County grand jury. Following a jury trial, the defendant was acquitted of armed robbery but convicted of aggravated kidnapping. The court sentenced defendant to a term of imprisonment of from 4 years to 4 years and 1 day to be served in the Juvenile Division of the Illinois Department of Corrections.

On appeal, the defendant claims that the statute permitting the transfer of juveniles to criminal court is unconstitutional in that it is vague and denies him procedural and substantive due process of law; that the trial court abused its discretion in transferring the defendant to adult criminal court; that he was denied his right to treatment and services under the Juvenile Court Act where the trial court failed to make a bona fide determination as to defendant's amenability to treatment as a juvenile

and as to the availability of treatment facilities; and that the trial court erred in failing to give the defendant's tendered jury instruction on the defense of necessity.

The facts which resulted in defendant's conviction occurred in the late evening of July 13, 1977, and the following day. The victim, Robert Shook, was driving his car on to the entrance ramp to Interstate Route 80 near Joliet, Illinois, when two men walked out in front of his car. Shook reported that he applied the brakes and his car slid sideways and the next thing he knew guns were in his face. The two men got in his car and threatened him. He was told to start driving, and when he caught up to two of the men's friends down the road to pick them up. About 50 yards down the road he picked up the defendant, Will Cater, Jr., and another man. Thereafter the defendant drove at the order of one of his companions who had a gun. The victim Shook testified that the defendant had personally threatened him. While Cater was driving Shook, who was then sitting in the back seat of the car, was robbed at gunpoint of his wallet containing $48 by one of the men with a gun. The defendant and his companions then forced Shook to accompany them to Nebraska where they left the vehicle. Shook then notified the police, and the defendant and the other three men were arrested there.

The first issue raised on appeal is whether the juvenile transfer statute (Ill. Rev. Stat. 1977, ch. 37, par. 702—7) is unconstitutional as the defendant urges. The exact same issue was recently decided by the Illinois Supreme Court in *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366. The Illinois Supreme Court in *Taylor* interpreted the juvenile transfer statute, as adopted by the legislature in response to the case of *Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045, as satisfying the constitutional requirements of due process. The *Taylor* opinion clearly recites the law on the multiple subissues argued by defendant Cater in claiming the statute here is unconstitutional. We adhere to the reasoning espoused in the *Taylor* opinion and conclude as the supreme court did that the transfer statute (Ill. Rev. Stat. 1977, ch. 37, par. 702—7) is constitutional.

The defendant's second argument is that the trial court abused its discretion in transferring him from juvenile jurisdiction to allow prosecution as an adult. " 'The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached.' " (*People v. Taylor* (1979), 76 Ill. 2d 289, 306, 391 N.E.2d 366, 373, quoting *Kent v. United States* (1966), 383 U.S. 541, 553, 16 L. Ed. 2d 84, 93, 86 S. Ct. 1045, 1053.) The Illinois Juvenile Court Act provides six criteria to be considered by the juvenile court judge in making a determination on a motion to transfer the juvenile to be prosecuted under the criminal law.

"(1) [W]hether there is sufficient evidence upon which a grand jury may be expected to return an indictment; (2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner; (3) the age of the minor; (4) the previous history of the minor; (5) whether there are facilities particularly available to the Juvenile Court for the treatment and rehabilitation of the minor; and (6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority." (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(3)(a).)

The defendant conceded the fact that there was sufficient evidence upon which a grand jury indictment could be expected to be returned. It is also self-evident and not contested that defendant Cater was 16½ years old when the alleged crime was committed. The remaining four criteria set forth in the statute as applied to the facts of the instant case are argued by the defendant to not support the decision to transfer defendant to adult criminal court.

■■ ■ According to the Illinois Supreme Court the role of the appellate court in determining the propriety of a transfer of a juvenile to be prosecuted as an adult is to determine whether, in evaluating the evidence presented at the hearing on the motion to transfer, in light of the aforementioned statutory criteria, the juvenile judge has abused his discretion. (*People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.) No formal statement of the juvenile judge's reasons for authorizing the transfer is necessary. All that is required is the preservation of a record which will allow a meaningful review of the juvenile judge's exercise of discretion. The record in the present case is sufficient for our meaningful review and supports a conclusion that the trial court did not abuse his discretion in the case at bar. The defendant's argument that the trial court gave more weight to some of the six statutory criteria rather than applying all six on an equal basis is unpersuasive. A similar argument was expressly rejected in *Taylor*. The defendant strongly suggests that the trial court erred in ordering the transfer because here the defendant (1) had no prior history of delinquent behavior, (2) his participation in the offense was minimal, and (3) there was no bona fide attempt to determine the availability of juvenile facilities for defendant's treatment and rehabilitation. We disagree with defendant's arguments. The record of the transfer hearing supports the conclusion that defendant took an active part in the crime that occurred. He drove the car and the victim testified that defendant threatened him personally with harm. The offense charged was committed in an aggressive manner with utter disregard for the safety of the victim. The defendant's companions were armed and

threatened to use the weapons on the victim. These facts support the court's findings.

The record of the transfer hearing further establishes through the testimony of Louis Stalzer, the probation officer of Will County, that no facilities for delinquent minors existed in Will County and that the Department of Corrections would better serve the needs of the defendant. This testimony was not rebutted and clearly refutes the defendant's allegation that no bona fide attempt was made by the court to determine whether any facilities were particularly available for the treatment of the defendant.

With regard to the background of the defendant the State concedes that no evidence was presented at the transfer hearing which indicated that the defendant had any previous delinquent or criminal history. The defendant asserts on the basis of his presentence report that his past history of good conduct should have precluded the transfer.

▬▬ The United States Supreme Court has addressed the question of the assignment of weights to the statutory criteria:

> "Although not all such factors will be involved in an individual case, the Judge will consider the relevant factors in a specific case before reaching a conclusion to waive juvenile jurisdiction and transfer the case * * * for trial under adult procedures * * *." (*Kent v. United States* (1966), 383 U.S. 541, 567-68, 16 L. Ed. 2d 84, 101, 86 S. Ct. 1045, 1060; *accord, People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.)

The transfer hearing is dispositional in nature. It does not determine the guilt or innocence of the minor but rather determines the forum in which guilt or innocence will be judged. The determinative standard to satisfy due process is fundamental fairness. Fundamental fairness does not require the juvenile judge to exercise his discretion with any degree of mathematical certainty. Not all of the factors set forth in the transfer statute need be resolved against the juvenile to justify a waiver of juvenile court jurisdiction. (*People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.) We agree with the holding in *Taylor*, "that under our statute the State need only present evidence sufficient to persuade the trial court, in the sound exercise of its discretion, that in light of the statutorily prescribed criteria transfer is warranted." (76 Ill. 2d 289, 303-04, 391 N.E.2d 366, 372.) The record manifestly supports the trial judge's finding that it was not in the best interest of the minor and the public to proceed under the Juvenile Court Act, but that the best interest of the minor and the security of the public required that the minor defendant continue in custody for a period extending beyond his minority. The trial court did not abuse its discretion in permitting the criminal prosecution in the present case.

The third issue the defendant presents is:

"Whether the defendant was denied his rights to treatment and services under the juvenile court act where the trial court failed to make a bona fide determination as to the defendant's amenability to treatment as a juvenile and where the only evidence presented as to the availability of treatment facilities merely established that there were no facilities for delinquent juveniles in Will County."

The defendant contends that there is a strong presumption that minors are to be treated within the juvenile system and that a minor has a right to treatment under the Juvenile Court Act. As the supreme court pointed out in *Taylor* such a presumption can be overcome by the juvenile judge's consideration of the six criteria set forth in the statute. (Ill. Rev. Stat. 1977, ch. 37, par. 702—7.) Our analysis of the trial court decision to transfer in deciding the preceding issue is also determinative of the similar argument regarding this issue. Contrary to defendant's argument, no one criteria is all determinative, nor is application of equal weight to each and every one of the six criteria required.

The last issue presented for review is whether the trial court erred in refusing to give defendant's tendered jury instruction on the defense of necessity at the criminal trial. The defendant contends that there was sufficient evidence before the jury that he was without blame in occasioning or developing the situation, and that he reasonably believed his actions in cooperating in the kidnapping were necessary to avoid a greater injury to the victim than that which might result from his own conduct.

It is well settled that the defendant is entitled to have the jury consider any legally recognized defense which is supported by some evidence in the record. (*People v. Unger* (1975), 33 Ill. App. 3d 770, 338 N.E.2d 412.) Cater's testimony, if believed, indicated that he was without blame in occasioning the situation. Some slight evidence was presented through defendant Cater's own self-serving testimony, that he personally feared co-defendant Eddie Grimes, who had a gun, and he further feared that his noncooperation would cause Grimes to injure the victim, Robert Shook.

■■ ■ Despite the presence of some slight evidence on the defense of necessity the trial court correctly refused to give defendant's tendered jury instruction on that defense. The defense tendered non-Illinois Pattern Jury Instruction which provided:

"It is a defense to the charge made against the defendant, Will Cater, that his conduct which would otherwise be an offense, was justifiable by reason of necessity if he was without blame in occasioning or developing the situation and he reasonably believed

his conduct was necessary to avoid an injury to Robert Shook greater than the injury which might reasonably result from his own conduct."

The tendered instruction is only a recitation of the statutory law in Illinois with respect to the defense of necessity. (Ill. Rev. Stat. 1977, ch. 38, par. 7—13.) It does not attempt to apply the law it purports to state, to the facts of the case. In fact the form of the offered tendered instruction might mislead the jury as to the applicability of the necessity defense to the facts of the present case, considering that the jury was given the defendant's tendered instruction on the affirmative defense of compulsion. The major distinction between the defenses of compulsion and necessity is that in the former the source of the coercive power is from a human being and in the latter the coercive power has traditionally arisen from the forces of nature. In *People v. Lucus* (1968), 41 Ill. 2d 370, 243 N.E.2d 228, a case factually similar to the case at bar, the trial court's refusal to give a tendered instruction on the defense of necessity was upheld because the instruction was defective. The defective instruction in *Lucus* also merely reiterated the statutory definition of the defense of necessity without applying it to the facts of the case. We believe the *Lucus* case is controlling and that the tendered instruction on the defense of necessity would have misled the jury and was patently defective.

For the reasons stated the judgment of the Circuit Court of Will County is affirmed.

Judgment affirmed.

STENGEL and SCOTT, JJ., concur.