*In re* DENNIS JONES, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DENNIS JONES, Respondent-Appellant.)

First District (1st Division)    No. 79-491

Opinion filed June 16, 1980.

James J. Doherty, Public Defender, of Chicago (Dennis E. Urban and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Christopher Cronson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Pursuant to a petition for adjudication of wardship, and a subsequent delinquency finding on September 12, 1977, respondent, a minor, was committed to the Department of Corrections under the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 701—1 *et seq.*). This appeal followed.

Respondent has presented the following issues for review:

(1) Whether the trial judge, who placed the minor on one year probation on March 15, 1977, pursuant to a delinquency finding and who also committed him to the Department of Corrections on the same delinquency finding on September 12, 1977, inflicted multiple punishments for the same offense in violation of the double jeopardy clauses of both the United States Constitution and Illinois Constitution.

(2) Whether a minor who was placed on one-year probation on March 15, 1977, was deprived of due process when the trial court on September 12, 1977, committed him to the Department of Corrections on the same original delinquency petition without a finding of a probation violation.

(3) Whether the trial judge who induced the minor's admissions to the charges with a promise that he would not commit the minor to the Department of Corrections properly required that this promise be fulfilled or that respondent be allowed to withdraw his admissions.

(4) Whether the court properly modified the disposition of respondent's case based upon a prior plea agreement which the court had agreed to after changed circumstances were brought to the court's attention.

We shall first consider the last issue relating to the matter of a prior plea agreement. Respondent, in his brief, claims that the following matters occurred prior to the order of commitment on September 12, 1977.

On February 21, 1977, a petition No. 77J 1719 for adjudication of wardship was filed in the Juvenile Division of the circuit court charging respondent with burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1). The public defender was appointed, and a denial to the charge was entered. Respondent's brief further claims that on March 15, 1977, the trial judge informed the respondent that he was going to participate in a conference relative to a possible acceptance of certain admissions from him in connection with a negotiated settlement. The brief contains the following colloquy from the report of proceedings from the record on the same day:

"MR. MICHAEL [Prosecutor]: Your Honor, the agreement that we have discussed in chambers with the public defender and the Court involves admissions to Petitions 77 1179 and 77 1097. Those are the two petitions.

MS. ECKERT [Public Defender]: 1719?

MR. MICHAEL [Prosecutor]: Lines 22 and 28. There are two additional petitions which have been advanced and reset from Thursday on Calendar 12 to this courtroom today. Those two petitions, pursuant to the pretrial agreement, the State intends to have Stricken On Leave to Reinstate.

THE COURT: This is Dennis Jones before me, is that correct?

MS. ECKERT [Public Defender]: Yes, sir.

            * * *

MS. ECKERT: Your Honor, if I may, there has been a conference between the State's Attorney and myself.

During that conference, the State's Attorney communicated to me—

THE COURT: What will the date be on this progress record?

MR. MICHAEL: 4/25

MS. ECKERT:—That if Dennis Jones were to withdraw his previously entered denial as to two counts of burglary; specifically, 77J 1097 and 77J 1719 and at this time enter an admission, they

would SOL the other two counts—petitions that are against him from Calendar 12.

\* \* \*

THE COURT: Public Defender, I'm not sure what you're getting at. It's my understanding a year's probation, referral to UDIS [Uniform Delinquent Intervention Service]—Oh, see what you're saying.

You mean that he can't get DOC if UDIS doesn't want him.

\* \* \*

THE COURT: I mean, the feeling was that whether or not UDIS became involved or they were referred, that DOC would not be an alternative disposition, is that correct, Miss State's Attorney, on all these cases?

MS. AMDUR [Prosecutor]: That's correct.

MS. ECKERT: I wanted to state it for the record.

THE COURT: You've done so.

MS. ECKERT: I indicated this to Mr. Jones. He does understand this, and he wishes to withdraw his previously entered plea of denial to Petition 77 1097 and 77 1719 and enter an admission."

After asking the respondent his age and educational background and ascertaining that he knew what an admission meant, the trial judge stated:

"THE COURT: Well, we have reached an agreement in your case. Pursuant to the public defender's request I was called in to a pre-trial conference in this matter.

State's attorney talked to the public defender. We all talked together about your record, and we discussed the possible settlement of this with an admission to two charges and two charges being dismissed or SOL'd do you understand that we talked—that we talked about that?"

The trial judge did not mention that the respondent could be committed to the Department of Corrections when he informed the respondent of his rights. After the trial judge advised the respondent of his constitutional rights and obtained a factual basis for both petitions, which was stipulated by defense counsel, the respondent voluntarily entered admissions to both petitions (1097 and 1719). Both petitions involved burglary charges. Thereafter, the trial judge said the following:

"THE COURT: Court will accept the admission. There will be a finding of delinquency, adjudication of wardship.

Disposition will be one year's probation, social investigation, refer to UDIS, progress report on 4/25."

We have quoted at length from respondent's brief, which quotes refer to the excerpts of record and the report of proceedings contained in the common law record filed with the clerk of this court. We note from the report of proceedings that proceedings were held on the following

dates: February 21, 1977, March 15, 1977, March 16, 1977, April 25, 1977, May 9, 1977, May 27, 1977, June 13, 1977, June 24, 1977, June 25, 1977, and September 12, 1977. On the last page of said report of proceedings nine different names are listed as court reporters for the above dates and two signatures appear to certify the entire report of proceedings. No explanation appears as to the other seven names.

Also on page 13 of the report of proceedings the following appears from the hearing on March 15, 1977:

"THE COURT: Your name, sir?

MR. MICHAEL: This is Perry Morgan.

THE COURT: Dennis Jones?

MINOR RESPONDENT JONES: Yes.

THE COURT: All right. Mr. Public defender, gentlemen, I've been asked by the Public defender to participate in a conference in relation to the possible acceptance of certain admissions from you in connection with a negotiated settlement.

In other words, the State will talk. Your attorney will talk. I'll listen, and I'll talk, and perhaps there will be some agreement between the three of us and a decision as to what the appropriate disposition of these cases should be if you admit certain charges.

Do you understand that? That I'm going to participate? Do you understand that?

MINOR RESPONDENT MORGAN: Yes.

MINOR RESPONDENT JONES: Yes.

THE COURT: And do you authorize me to hear this material at this time?

Do you object to my hearing this about your records so that we can negotiate a settlement?

Do you object either of you?

MINOR RESPONDENT MORGAN: No.

MINOR RESPONDENT JONES: No.

THE COURT: If we reach an agreement, and it's not acceptable to one or both of you, I will accuse [sic] myself and this matter will be tried by another judge unless your attorney waives that at this time, do you understand that?

MINOR RESPONDENT MORGAN: Yes.

MINOR RESPONDENT JONES: Yes.

(Whereupon hearing in the above-entitled cause was continued to 1:30 p.m. on the same date heretofore mentioned.)"

The State, in its brief, has not refuted or denied the claims of respondent as to the record filed in this case nor has the State denied that a plea bargaining agreement providing for probation on Case No. 77J 1719 was approved by the State and the court at the March 15, 1977, hearing. The State maintains that under petition 77J 1719 no disposition took place.

In its brief, the State initially maintains that no disposition took place in the instant case on March 15, 1977, and that the order simply constituted a referral to UDIS (Uniform Delinquent Intervention Service), with a request for progress reports, and a request that a social investigation report be prepared. Section 5—1 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—1), provides that after adjudging a minor a ward of the court, the court shall hear evidence regarding the proper dispositional order. Section 5—1 provides for written and oral reports. Clearly in the instant case the court did not intend to make a disposition of this matter on March 15, 1977, pursuant to section 5—1 since no reports were ordered prior to March 15, and the report was in fact ordered on March 15. Rather, the court intended to continue the matter so that a social investigation could be obtained and a referral to UDIS could be arranged. This is evidenced by the fact that the case subsequently reappeared numerous times for progress reports. The fact that a referral to UDIS was ultimately made, the UDIS referral was the desired effect of the March 15, 1977, order. Accordingly, the March 15, 1977, order entered by the trial court did not have the effect of a dispositional order. The court's order that the minor be placed on one-year probation was obviously conditional upon the report from UDIS and the social investigation report. No final disposition was made on that date.

However, should this court determine that the order of March 15, 1977, did constitute a dispositional order, the People maintain as an alternative argument that the subsequent order of September 12, 1977, was a proper modification of the prior order of March 15, 1977.

The respondent maintains that on March 15, 1977, after the trial judge found the minor delinquent and adjudged a ward of the court based on the minor's admissions to delinquency petitions 77J 1097 and 77J 1719, he gave the minor respondent a disposition of one year's probation on both petitions. Subsequently, the same trial judge on September 12, 1977, gave the minor a multiple disposition on petition No. 77J 1719 by committing him to the Department of Corrections on that same original delinquency finding entered on March 15, 1977. In doing so, the trial judge's actions violated the double jeopardy clauses of both the United States Constitution and Illinois Constitution.

In addition respondent has claimed a violation of due process under the Federal and State constitutions and the necessity of a finding of a violation of probation prior to a commitment order.

A number of factual matters sought to be raised by respondent find ample support in the record filed in this cause. The one exception is the omission of an order granting probation in case No. 77J 1719 on March 15, 1977, as claimed by respondent.

"For an assignment of error, the record must show the error; hence,

the record must be preserved for an adequate assessment on appeal. This is so because, on review, 'the reviewing court is restricted in its examination to the record.' *(People v. Shoffner* (1948), 400 Ill. 174, 177.) A reviewing court may not guess at the harm to an appellant * * * This is not its role. Rather the reviewing court evaluates the record, as it is, for error. Where the record is insufficient or does not demonstrate the alleged error, the reviewing court must refrain from supposition and decide accordingly. This court has consistently held that way." *(People v. Edwards* (1978), 74 Ill. 2d 1, 6-7, 383 N.E.2d 944.)

Accord, *Neylon v. Illinois Racing Board* (1978), 66 Ill. App. 3d 621, 284 N.E.2d 433.

Respondent urges that the supreme court has held that in a criminal case the pronouncement of the sentence is the judicial act which comprises the judgment of the court and the entry of the judgment order is a ministerial act and is merely evidence of the sentence. *(People v. Allen* (1978), 71 Ill. 2d 378, 375 N.E.2d 1283.) Respondent argues that if there is a conflict in the report of proceedings and the common law record, the judicial pronouncement in the report of proceedings should prevail. *People v. DePratto* (1976), 36 Ill. App. 3d 338, 343 N.E.2d 628.

■■ Generally, where the record on appeal is incomplete, a reviewing court will indulge in every reasonable presumption favorable to the judgment, order or ruling appealed from, including the presumption that the trial court ruled or acted correctly, and will resolve any doubt arising from the incompleteness of the record against the appellant. *People v. Fochs* (1976), 40 Ill. App. 3d 966, 353 N.E.2d 326.

Despite the claimed omission or incompleteness or possible conflict in the report of proceedings in the record in the instant case, respondent finallly asserts that it is undisputed that a plea bargaining agreement was made on March 15 prior to trial with participation and approval by the trial court. Respondent further states that the plea agreement was acknowledged by the Assistant State's Attorney in the trial court and the accuracy of such agreement has not been disputed or contested by the State on appeal.

From our examination of the relevant portions of the transcript and the record, we are unable to resolve the issues pertaining to the proceedings on March 15. In our judgment we are convinced that the plea bargaining attempts must prevail over the possible errors relating to the record in this case.

This court recently outlined the scope of plea bargaining by stating that:

> "We believe a discussion of the background and function of the plea bargaining process will aid our determination of the intended

boundaries of the term 'plea discussion.' First, plea bargaining is accepted today as an integral part of our criminal justice system. (*Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495.) Without plea bargaining, we would have to multiply greatly the number of courts, judges, and prosecutors to handle the remaining caseload. (*Santobello*, 404 U.S. 257, 260, 30 L. Ed. 2d 427, 432, 92 S. Ct. 495, 498.) As a result, the present concern of the courts and legislatures is not whether to permit plea bargaining, but how to fully utilize this mechanism and, at the same time, to ensure that the final bargain is fair and just. One step in this direction has been to bring plea negotiations into the bright light of our courtrooms for judicial scrutiny and approval. (See Ill. Rev. Stat. 1977, ch. 110A, par. 402.) In addition, once the need for plea bargaining is recognized, it becomes apparent that no properly advised defendant will fully and candidly participate in such negotiations if statements made during the negotiations may be used against the defendant when negotiations fail. Further, it would be inherently unfair to allow the State to encourage defendants to participate in plea bargaining and then, if negotiations fail, use that participation against the defendant. (See *United States v. Ross* (5th Cir. 1974), 493 F.2d 771.) In response to this problem, Rule 402(f) was enacted to protect communications made by the defendant in the bargaining process from being turned into a weapon of the State at a later trial. With this background in mind, we conclude that the term 'plea discussions' encompasses statements made by the defendant with the purpose of obtaining reduction of punishment or other favorable treatment from the State in return for a plea." (*People v. Morris* (1980), 79 Ill. App. 3d 318, 331-32, 398 N.E.2d 28.)

See also *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229.

■■ It appears that there were four different charges pending against respondent on March 15 and that plea negotiations ensued involving all four charges. We are unable to ascertain what inducement, if any, was offered to respondent by the State with some degree of participation by the trial court. However, we are in a posture to state that where the record fails to show or reflect the degree of participation or the entire plea bargaining agreement or process, such a failure should not enure to the benefit of the State to the detriment of respondent in this case. See *People v. Friedman*; *People v. Rosen* (1970), 128 Ill. App. 2d 82, 261 N.E.2d 488.

Under the alleged facts of this case, we believe that consistent with the purpose of plea negotiations and Supreme Court Rule 402, (Ill. Rev. Stat. 1977, ch. 110A, par. 402), that the ends of justice will be best served by vacating the judgment entered on September 12, 1977, in cause

No. 77J 1719 and remanding this case for a further hearing to clarify the record on the material issue whether respondent was granted probation in the March 15, 1977, proceedings. (See *In re Thompson* (1980), 79 Ill. 2d 262, 402 N.E.2d 609; *In re Sneed* (1978), 72 Ill. 2d 326, 381 N.E.2d 272.) Therefore, the judgment entered below is reversed and the cause remanded for further proceedings.

Our decision on this issue makes it unnecessary to consider the remaining issues.

Reversed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.