THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MONTGOMERY TODD REESE, Defendant-Appellant.

Third District No. 80-106

Opinion filed November 14, 1980.

C. Brett Bode, of Bernardi, Ault & Bode, of East Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

On September 7, 1979, a two-count delinquency petition was filed in the circuit court of Peoria County alleging that the minor defendant,

Montgomery Todd Reese, committed the murder of Paul Brown, a security guard at the Willow Knolls Country Club in Peoria. Subsequently, the Peoria County State's Attorney moved to transfer the defendant from the jurisdiction of the juvenile court for the purposes of prosecuting Reese as an adult (Ill. Rev. Stat. 1979, ch. 37, par. 702—7). Following a transfer hearing, the State's motion was granted, and the defendant was indicted for murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3)), and armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a)). On December 10, 1979, the defendant pleaded guilty to the felony murder charge. The remaining two counts of the indictment were dismissed on the State's motion. After a sentencing hearing, the circuit court sentenced the defendant to the Department of Corrections for a term of 25 years. The defendant now appeals from his conviction.

Very recently, this court affirmed the conviction of Reese's codefendant, Jerry Richard Miller (*People v. Miller* (1980), 89 Ill. App. 3d 973, 412 N.E.2d 175). Because our opinion in that case contains a comprehensive recitation of the facts, we see no reason to repeat them in their entirety here. We will, however, include the relevant facts as they bear upon our disposition of the various issues raised on appeal here.

The first issue raised by the defendant concerns the propriety of the circuit court's decision to allow Peoria County sheriff's detective Kim Sylvester to relate at the transfer hearing co-defendant Miller's statements regarding Reese's participation in the armed robbery and murder of Brown. The substance of Miller's statements are as follows: At approximately 9 p.m., on August 29, 1979, Miller and Reese were sitting at the entrance of the Willow Knolls Country Club waiting for a ride. Neither Reese nor Miller had a car. A short time later a friend of Reese's came by and offered to give the two a ride. Reese and Miller got in, and after some discussion Reese suggested "that they should rip off a car and then go rip somebody off." The driver told Reese and Miller that he didn't want any part of that, and left the two off. Miller and Reese then walked to some apartments located on Terra Vista, where they separated because Reese had to report back to his parents. However, Reese told Miller he could get out later, and told him to meet him (Reese) later at the Woodland Baptist Church.

Subsequently, Reese and Miller met by the church, and went to a man's house to inquire about a car located in front that was for sale. While Reese, Miller, and the owner of the car were discussing a possible sale, Reese accidentally dropped a knife he was carrying. They did not purchase the car. Miller stated to Detective Sylvester that their original intention had been to steal the car, but they changed their minds.

After the discussion with the owner of the car, Reese left Miller for a

period of time and returned driving a white Corvette. Miller rejoined him, and after picking up Debra Rogers the three drove around drinking beer and smoking marijuana. While they were driving, Miller told Reese that he wanted to go to the country club to see Brown. Although they did not intend to rob Brown at this time, the two had, according to Miller, discussed robbery throughout the evening.

After parking the car in the country club's parking lot, Reese reached under the floor mat and took out a .22-caliber pistol, which he then placed in his waistband. Brown met Reese and Miller by the door of the office, and after a short conversation told the two that he was going to call his wife and that they should come in. At this time Reese told Miller to step back, and shot Brown once. Brown, however, was still on his feet and proceeded down a hallway. Reese then shot Brown again.

Following the shooting, Reese and Miller went to the concession area. There they broke a window to obtain entry to the canteen, where a safe was located. Miller and Reese took the safe, brought it outside and placed it in the car. Before leaving, Reese turned over some pinball machines.

Miller also stated that in addition to the .22 pistol that was used to kill Brown, a buck knife which belonged to him (Miller) was also used. Miller told Sylvester that Reese carried the knife all night. However, he did not see Reese stab Brown. It should be noted that Peoria County Detective David Owen testified at the transfer hearing that Reese told him that it was Miller who shot and stabbed Brown.

The defendant takes the position that Sylvester's testimony regarding Miller's statements inculpating the defendant in the crime constitutes unreliable hearsay, and as such should not have been allowed into evidence at Reese's transfer hearing. The State responds by arguing that these statements are not hearsay, or in the alternative, that the relaxed rules of evidence applicable to juvenile transfer proceedings permit Sylvester's testimony regarding Miller's statements.

The threshold question is, obviously, whether Sylvester's testimony constitutes hearsay. Hearsay has been defined as "testimony in court * * * of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741. Accord, E. Cleary & M. Graham, Handbook of Illinois Evidence §801.1 (3d ed. 1979); McCormick, Handbook of the Law of Evidence §246 (2d ed. 1972)). The State contends that Sylvester's testimony regarding Miller's statements were not hearsay because they were not offered to prove the matters asserted therein as true but rather offered to show (1) the aggressive and premeditated manner in which the crime was com-

mitted and (2) the previous history of the defendant, both of which are factors to be weighed by the court in deciding whether to grant the State's transfer motion (Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3)(a)). Although this may have been the ultimate purpose for which Miller's statements were offered, that purpose cannot be achieved unless those statements were offered with the underlying presumption of truth. In other words, before the court can consider Miller's version of the events of August 29, 1979, in light of the various factors contained in section 2—7(3)(a) of the Juvenile Court Act it must initially accept his story as true. Consequently, Miller's statements necessarily had to be offered for the initial purpose of proving the truth of the matters asserted therein, *i.e.*, the manner in which the crime was committed and the defendant's previous history. This being the case, Detective Sylvester's testimony relating those statements constituted hearsay.

However, even though Detective Sylvester's testimony regarding Miller's statements was hearsay, given the relaxed rules of evidence applicable to juvenile transfer hearings, we do not think the circuit court erred in allowing those statements into evidence. In *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, the Illinois Supreme Court emphasized that the juvenile transfer hearing is not adjudicatory in nature but is dispositional. The defendant's guilt or innocence is not decided at such a hearing, but rather to be decided is the forum in which the defendant's guilt or innocence is to be determined. "The transfer hearing not being adjudicatory, the procedural safeguards required at criminal trials and adjudications of delinquency are not mandated by due process." (*Taylor*, 76 Ill. 2d 289, 303, 391 N.E.2d 366, 372. See Ill. Rev. Stat. 1979, ch. 37, pars. 702—7(3)(a), 705—1.) It is due process and fundamental fairness, then, that govern the juvenile transfer procedure. *Taylor*.

In *People v. Hamilton* (1980), 80 Ill. App. 3d 794, 400 N.E.2d 599, the defendant argued, as does the defendant Reese here, that hearsay evidence should not have been used at the juvenile transfer hearing to establish that the offense was committed in an aggressive and premeditated manner. Quoting with approval from *Taylor*, in which the supreme court stated that "[t]he use of documentary or testimonial evidence of a reliable nature, even though hearsay, constitutes a much less time-consuming method of proof very nearly essential to this type of hearing [and] [i]ts use in that context is not, in our judgment, constitutionally impermissible" (76 Ill. 2d 289, 305, 391 N.E.2d 366, 373), the *Hamilton* court stated "[r]eliable hearsay evidence is accordingly admissible to establish the nature of the alleged offense, as it is to establish the other statutory factors." 80 Ill. App. 3d 794, 800, 400 N.E.2d 599, 604; accord, *People v. Diaz* (1979), 75 Ill. App. 3d 387, 394 N.E.2d 465.

■■ The defendant contends that Miller's statements, as those of a co-

defendant, are inherently unreliable, and the due process and fundamental fairness constraints of juvenile transfer hearings preclude their consideration by the circuit court (see *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (White, J., dissenting)). Although statements of accomplices such as Miller are to be viewed with circumspection (*People v. Sherman* (1980), 87 Ill. App. 3d 937, 940, 409 N.E.2d 486), it is well settled that the uncorroborated testimony of an accomplice is sufficient to support a criminal conviction (*People v. Kiel* (1979), 75 Ill. App. 3d 1030, 394 N.E.2d 883). If the due process guarantees of the constitution do not bar the conviction of a defendant based solely upon the testimony of an accomplice, certainly they do not preclude the admission into evidence of the testimony of a co-defendant in a nonadjudicatory proceeding such as a juvenile transfer hearing.

■■■ "[H]earsay evidence is generally admissible where it is the kind of evidence a reasonable mind must accept." (*People v. Diaz* (1979), 75 Ill. App. 3d 387, 393, 394 N.E.2d 465, 469.) In the context of juvenile transfer hearings, such a determination is made by the court, whose discretion in such matters is unfettered except for due process limitations. (*Taylor.*) We do not believe that discretion has been abused here with regard to the court's decision to allow Detective Sylvester to testify about Miller's statements to him.[1] Similarly, we believe the court did not err in allowing Sylvester to testify regarding statements given to him by William Bowcott, an acquaintance of Reese, to which the defendant also objected on hearsay grounds.

The second issue which we will consider concerns the court's refusal to admit into evidence at the transfer hearing the results of polygraph examinations taken of both the defendant and Miller. The defendant sought to admit these results for the purpose of rebutting Miller's statements given to Detective Sylvester. Under section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3)(a)), the rules of evidence applicable to juvenile transfer hearings are to be found in section 5—1 of the Act. There it is stated that "[a]ll evidence helpful in determining this question [of whether to grant the State's transfer motion] including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." (Ill. Rev. Stat. 1979, ch. 37, par. 705—1(1). See *Taylor.*) It is well settled in this State, as well as in most of our sister States, that polygraph examination results are inadmissible in

---

[1] Regarding Miller's statements, it should be noted that even if we had found the decision of the court to admit Miller's statements to be error, it would have been harmless, because the court admitted that its decision to grant the State's transfer motion was based "very little if at all" on Miller's statements.

adjudicatory proceedings to show the guilt or innocence of the accused. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671; *People v. Nicholls* (1970), 44 Ill. 2d 533, 356 N.E.2d 818; *People v. Zazzetta* (1963), 27 Ill. 2d 302, 189 N.E.2d 260; *People v. Monigan* (1979), 72 Ill. App. 3d 87, 390 N.E.2d 562, (polygraph examination results inadmissible even though stipulated by defendant and State); *People v. Saffold* (1977), 47 Ill. App. 3d 934, 365 N.E.2d 524.) "The rationale seems to be that while the polygraph examination may be a valid investigative tool [citation], the results have been inadmissible in trial because, '[t]he scientific reliability of the polygraph has long been the subject of dispute among learned experts.'" *People v. Monigan* (1979), 72 Ill. App. 3d 87, 92, 390 N.E.2d 562, 565, quoting *People v. Zazzetta* (1963), 27 Ill. 2d 302, 309, 189 N.E.2d 260, 264.

Although it is clear that polygraph examination results are not to be used at trial, our research has uncovered no case in which the question was raised as to whether polygraph examination results can be admitted into evidence at a juvenile transfer hearing which, as previously stated, is not adjudicatory but dispositional in nature. However, some guidance is provided by the case of *People v. Ackerman* (1971), 132 Ill. App. 2d 251, 268 N.E.2d 737. In *Ackerman,* the defendants contended that the trial court committed reversible error when it suggested during their sentencing hearing that they take polygraph examinations. With regard to using, or suggesting the use of, polygraph examination results during sentencing, the court made the following comments:

"Sentencing proceedings affect substantial rights of a criminal accused and are therefore critical stages of criminal prosecutions to which the courts have extended fundamental rights of due process. (*Mempa v. Rhay* (1967), [389 U.S. 128, 88 S. Ct. 254,] 19 L. Ed. 2d 336, 340; *People v. Vesley* (1967), 86 Ill. App. 2d 283, 288.) While evidentiary rules may be relaxed to some reasonable extent at the sentencing stage in the interest of securing the fullest dimension of background information concerning the person and the crime, we do not believe that polygraph evidence in its present stage of development, as to which there has been manifested 'strong aversion * * * by statute and decisions' (*People v. Triplett,* 37 Ill. 2d 234, *supra,* at page 239), should be either used or its use suggested at the sentencing stage of criminal proceedings. While the sentencing procedures are not intended to be conducted with strict formality, they are yet for the purpose of reaching the truth of the matter which by affecting the issues of aggravation and mitigation determine the resulting sentence. In this sense the use or suggested use of a process which has not been considered a valid method of determining truthfulness would seem to be no more

reliable or valid in the sentencing proceedings than in the determination of guilt or innocence." 132 Ill. App. 2d 251, 254, 269 N.E.2d 737, 739.

■■ Like sentencing hearings, wherein the truth of matters affecting aggravation and mitigation is of the utmost importance, ascertaining the truth of matters involving the aggressive and premeditated manner in which the offense was committed, as well as the other statutory factors set forth in section 2—7(3)(a) of the Juvenile Court Act, is paramount in juvenile transfer proceedings. As the *Ackerman* case points out, evidence which is inherently unreliable in determining the truth should not be allowed in sentencing hearings any more than it should be allowed in an adjudicatory proceeding, for it is the ability of such evidence to reveal the truth, and not the form of the proceeding, that should govern its admissibility. The same analysis holds true for evidence offered in juvenile transfer proceedings such as the case at bar. Therefore, given the fact that "there are so many inequities inherent in the use of the polygraph as to make it, at this point in time, grossly unreliable, if not absent any probative value" (*People v. Monigan* (1979), 72 Ill. App. 3d 87, 98, 390 N.E.2d 562, 569), we believe that results of polygraph examinations do not fall within the parameter of admissible evidence set forth under section 5—1(1) of the Juvenile Court Act, nor do we believe that due process and fundamental fairness concepts compel its admission. Accordingly, we hold that the trial court did not err in refusing to admit the results of Reese and Miller's polygraph tests into evidence at the defendant's hearing.

The next contention of the defendant is that the decision of the court to transfer Reese to the adult division was an abuse of discretion and not warranted by the evidence presented at the transfer hearing. Under section 2—7(3)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 702—7(3)(a)) "the State need only present evidence sufficient to persuade the trial court, in the sound exercise of its discretion, that in light of the statutorily prescribed criteria transfer is warranted." (*People v. Taylor* (1979), 76 Ill. 2d 289, 303-04, 391 N.E.2d 366, 372. Accord, *People v. Green* (1980), 86 Ill. App. 3d 852, 408 N.E.2d 479; *People v. Cater* (1979), 78 Ill. App. 3d 983, 398 N.E.2d 28.) The statutorily prescribed criteria are six in number, and are found in section 2—7(3)(a):

"(1) Whether there is sufficient evidence upon which a grand jury may be expected to return an indictment;

(2) whether there is evidence that the alleged offense was committed in an aggressive and premeditated manner;

(3) the age of the minor;

(4) the previous history of the minor;

(5) whether there are facilities particularly available to the

Juvenile Court for the treatment and rehabilitation of the minor; and

(6) whether the best interest of the minor and the security of the public may require that the minor continue in custody or under supervision for a period extending beyond his minority."

Regarding the weighing of these factors, "no one criteria is all determinative nor is application of equal weight to each and everyone of the six criteria required." *Cater*, 78 Ill. App. 3d 983, 988, 398 N.E.2d 28, 32.

■■ Viewing the evidence presented at the transfer hearing in light of these statutory criteria, we do not believe the court abused its discretion in granting the State's transfer motion. There can be no question that there was sufficient evidence to support a grand jury indictment. Indeed, the defendant stipulated to this fact. Further, it is evident that this crime was perpetrated in an aggressive and premeditated manner. Even if we disregard Miller's statements, as did the trial court, the fact remains that the defendant participated in a brutal, senseless killing. It is uncontradicted that he provided the ultimate murder weapon (the .22-caliber pistol). It is also clear that the armed robbery was conceived of beforehand, and after the shooting Reese assisted Miller in taking the safe from the country club. Regarding the minor's age, at the time of the crime he was 15 years old, but only one month from his 16th birthday. Certainly in the defendant's favor are the facts that he had no prior juvenile record (save for a station-house adjustment at the age of nine) and there was testimony by Janice Maclin, an investigator for the Peoria County Juvenile Court Services office, that there were adequate rehabilitative facilities available to the defendant if he were kept in the juvenile division. It cannot be denied that on the basis of Ms. Maclin's testimony, as well as on the basis of testimony of a psychologist and psychiatrist, that the defendant was in need of long-term psychological counseling and that the retention of juvenile court jurisdiction over the defendant would be in his best interest. However, under the sixth factor to be considered by the trial court in deciding whether to grant the State's transfer motion, the minor defendant's best interests are to be weighed against the interest of society and public security. Retention of the defendant in the juvenile division means that at a maximum the defendant would be detained until his 20th birthday. Given this fact, the brutality of the crime, the nature of the defendant's participation in it, and the other statutorily prescribed factors, we cannot say as a matter of law that the decision to grant the State's transfer motion reflects an abuse of the discretion vested to the court in matters such as these.

■■ The final issue raised by the defendant concerns the excessiveness of his 25-year sentence. A reviewing court may alter the sentencing judge's

disposition only upon a finding of an abuse of discretion. (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(4); *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 358 N.E.2d 882.) The minimum sentence the defendant could have received was 20 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(1).) At the sentencing hearing, the trial court went over in some detail the aggravating and mitigating factors which led to his sentencing determination. In taking the position that his sentence was excessive, the defendant directs this court's attention to his psychological and psychiatric evaluations that were admitted into evidence at the transfer hearing. He contends that his lack of remorse, which was emphasized by the court at the sentencing hearing, can be explained by the fact that he lacks the normal controls of conscience and guilt. He also points out that Kara Donahoo, a presentence investigator for the Peoria Adult Probation Department, stated that in her opinion no more than a minimum sentence of incarceration was warranted. Although we take note, as did the trial court, of these facts, we do not believe that the defendant has shown an abuse of discretion by the trial court, and we accordingly find his 25-year sentence was proper.

For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

ALLOY, P. J., and STENGEL, J., concur.